## The People ex. rel. the Treasurer of Wayne County v. the Controller of the City of Detroit.

*Central Police Court: Fines: Penal Laws: Library fund.* The prosecutions of offences at the Central Police Court, *chap. 13, sec. 11 City Charter*, are to be regarded as prosecutions under the penal provisions of the City Charter, and not under the municipal ordinances, and the fines so collected are to be applied to the support of township libraries.—*17 Mich. 390.*

*Heard and decided May 10.*

*Mandamus* to B. G. Stimson, Controller of the City of Detroit.

The following is the petition filed :

" Your petitioner, Paul Gies, respectfully represents and states to the court now here, that he is the duly elected and qualified treasurer of the county of Wayne, in said state, and that being such treasurer it becomes and is the

duty of all officers and other persons, who shall collect or receive any moneys on account of any fines for breaches of the penal laws and for penalties, to pay the same over to your petitioner, within twenty days after the receipt thereof; that it is the duty of your petitioner to keep an accurate account of all such moneys paid to him, separate and distinct from all other accounts, and to credit the same to the library fund, and to account therefor to the board of supervisors of said county at each annual meeting of said board; and your petitioner further shows that it is also his duty as such treasurer, between the 1st and 10th days of April, in each year, to apportion among the several townships in said county, according to the number of children therein, between the ages of four and eighteen years, as shown by the last annual statement of the county clerk on file in his office, all fines for any breaches of the penal laws and for penalties, or upon any recognizances in criminal proceedings, when collected and paid in to him.

Your petitioner further shows that as he is informed, and verily believes to be true, the Central Police Station Court, so called, of the city of Detroit, is established and held under the provisions of an Act, "entitled an Act to revise the charter of the city of Detroit, approved February 5, 1857," approved March 12, 1861, and also under an ordinance of the City of Detroit, passed March 6, 1866, to which said ordinance reference is made for certainty, and a copy whereof is hereto annexed marked A.

And your petitioner further shows that said court held its first session, and first went into operation on the 2nd day of April, A. D. 1866, and that since that time and previous to the date hereof, large sums of money have been collected in said Central police station court, in payment of fines imposed by said court, for offenses tried and determined therein, and that said moneys were by the clerk of said Central police station court paid in to Edward S. Leadbeater, the treasurer of the city of Detroit.

And your petitioner shows that said Edward S. Lead-beater, received in his capacity as treasurer of said city, from the said clerk of said Central police station court, being said fines aforesaid, the sum of eleven thousand and eighty-six dollars and twenty-five cents, ($11,086.25).

And your petitioner further shows that it is by law the duty of Benjamin G. Stimson, controller of said city, to open and keep an account with the treasurer of said city, in which he shall charge the said treasurer of said city with all moneys raised or received for each of the several funds of said city, and it is made the duty of the treasurer of said city to report to the said controller, at the end of each month, the amount received and credited by him to each fund, and on what account received; and your petitioner further avers that the aforesaid sum of eleven thousand and eighty-six dollars and twenty-five cents, has been so reported by said City Treasurer to said Benjamin G. Stimson, con-troller of said city of Detroit, together with the fund to which the same was credited, and that said city treasurer has been charged by said controller with said sum in his account with him.

And your petitioner further shows that on the 16th day of November, A. D. 1868, Emil P. Benoit, who was then county treasurer of said county, and the predecessor of your petitioner was ready and willing to receive said moneys and on said day duly and regularly demanded officially of said city treasurer, that he should pay over said moneys to such Treasurer of Wayne county, as aforesaid, and also on the same day duly demanded of Benjamin G. Stimson, who is the controller of said city of Detroit, that he should draw his warrant in favor of such Treasurer of Wayne county, upon said city treasurer, for the said moneys above stated. Your petitioner further states that said city treasurer of said city of Detroit after said demand, and on said 16th day of November, 1868, utterly refused to pay over said moneys to such Treasurer of Wayne county, and that said Benjamin

G. Stimson, controller of said city, after said demand, and on said 16th day of November, 1868, utterly refused to draw his said warrant for said moneys upon said treasurer, and in favor of such Treasurer of Wayne county.

Your petitioner further represents that said Edward S. Leadbeater, treasurer of said city, has no power to disburse said moneys, nor any of the funds in the city treasury, except upon a warrant signed by said Benjamin G. Stimson, controller of said city, and has, therefore, and for that reason refused to pay over said moneys to your petitioner without said warrant of said controller.

And your petitioner further states that he is advised and believes that he is entirely without remedy in the premises, unless it be afforded to him by the interposition of this honorable court, by their writ of *mandamus,* and he therefore prays that an order may be made requiring said Benjamin G. Stimson, controller as aforesaid, to show cause within eight days after service on him of a copy of this petition, why a *mandamus* should not issue from this court, commanding him to draw his said warrant upon said Edward S. Leadbeater, city treasurer, in favor of your petitioner for all moneys remaining in said Edward S. Leadbeater's hands from those received by him, for fines and penalties imposed in said central police station court, of said city of Detroit, and that such other and further order may be had in the premises as justice may require.

The following is the ordinance referred to in foregoing:

AN ORDINANCE to prescribe the duties of the police justice in all cases of violation of city ordinances.

It is hereby ordained by the common council of the city of Detroit:

Section 1. It shall be the duty of the police justice to attend the city hall, or any other police station house where the lock-up shall be, on every day of the week, Sundays excepted, at the hour of seven o'clock, A. M., to examine into, try and determine the case of every person confined in said station house for vagrancy, disorderly conduct, or drunkenness, when the nature and circumstances of the case or complaint are such that the same may, and in the opinion of such

THE PEOPLE *v.* THE CONTROLLER OF DETROIT.

justice should be summarily disposed of without a jury. All other cases of persons so confined, and the cases of all persons whatsoever, arrested on warrant issued from the Recorder's Court, shall be tried and disposed of in the mode and manner now provided by law. Upon conviction of any person or persons for any of the offenses herein set forth, the police justice may commit him or her to the Wayne county jail, or to the Detroit house of correction, for not more than six months, and impose a fine not exceeding fifty dollars and costs, and in default of the immediate payment thereof, to commit such person or persons to the Wayne county jail, or to the Detroit house of correction, for a term not exceeding six months, or until such fine and costs be paid.

Section 2. The police justice shall receive for his services in performing the duties required by the foregoing section the sum of 200 dollars per annum.

Section 3. It shall be the duty of the clerk of the police court to attend the city hall or any other police station house where the lock-up shall be, on every day of the week, Sundays excepted, at the hour of seven o'clock A. M., to keep a true record of the proceedings before the police justice at said station, in proper books to be provided therefor, and file and safely keep all papers pertaining to such proceedings; it shall be his duty to receive all costs, fines and dues of every description, from either party to complaints or prosecutions before said police justice, and which, by law, are taxable as justice's costs, and shall pay the same weekly to the city treasurer, and take his receipt therefor.

Section 4. Said clerk shall receive as compensation for performing the duties specified in said section 3, the sum of 200 dollars per annum.

Section 5. This ordinance shall take effect from and after the first Monday in April next.

Approved March 6, 1866.

The following is the answer of the defendant:

This respondent, Benjamin G. Stimson, now comes by his attorneys, Gray & Moran, and for answer to the said petition, and for cause why the writ prayed for should not be issued, says:

He admits that as charged in the said petition, said Gies is Treasurer of the County of Wayne, and that it is the duty of all persons receiving or collecting money for fines or penalties for breaches of the penal laws to pay the same over

to said treasurer, to be by him kept and applied as stated in the petition.

But this respondent avers that the penal laws referred to are the general penal laws of the state, and do not mean breaches of the provisions of city ordinances of a limited and local application and intended merely for the better government of the city for and in which they are operative.

He admits that the central police station court was established under the statute and ordinance referred to in said petition; that said court went into operation at the time stated, that fines to the amount stated were collected by the clerk of said court, and were by him paid over to the Treasurer of the city of Detroit, who now holds the same.

Respondent also admits the duties of the said city treasurer and controller to be as stated in said petition, and that said treasurer did report to said controller as stated. He also admits the demand for the said money, and the refusal to pay the same as stated, and that said city treasurer cannot pay over said moneys or any other moneys in the city treasury, save on the warrant of this respondent.

And this respondent, further answering, says:

That the said fines, as aforesaid, imposed and collected in said court, were not imposed for or on account of any breaches of any penal law of the state. That long prior to the passage of the Act of 1861, referred to in said petition, there was and still is in force in said city, an ordinance duly ordained by the common council of said city, and approved by the mayor, a true copy of which is hereto annexed, marked exhibit "A," and which respondent prays may be taken as a part of his answer.

That all the fines so imposed and collected in said court were for offences against and complaints made expressly charging a violation of the provisions of said ordinance; that the greater portion of said fines were imposed upon charges of drunkenness or being a drunken person; that many of said fines were imposed for violations of the provisions of

one, two, four, five, six and seven of said ordinance hereto annexed and marked "A;" that in all cases the complaints, under which the parties were tried and convicted, charged the offence of a violation of the said city 'ordinance and referred expressly to such ordinance.

All of which this respondent is ready to verify and prove, and prays that said writ do not issue, and that he be herein dismissed with his costs, etc.

(Signed)  B. G. STIMSON, <em>Collector.</em>"

To the above answer was attached a statement setting forth a summary of fines collected at the Central station police court, to wit:

| | | | |
|---|---|---|---:|
| Found concealed | *Sec.* 1, *ch.* 69. . . . . . . . . . . . | | $ 40 |
| Making noise . . | " 2, " . . . . . . . . . . | | 2,288 |
| Vagrancy . . . . | " 3, as amended, *ch, 69.* . . .. . . . | | 280 |
| Disorderly persons | " 3, . . . . . . ., " . . . . . . . | | 4,837 |
| Indecent exposure | " 7, . . . . . . " . . . . . . . | | 130 |
| Drunken persons . | " 3, . . . . . . " . . . . . . . . | | 5,162 |

$12,737

*P.* J. D. *Van Dyke,* Prosecuting Attorney, and

*H. M. Duffield* and *G. V. N. Lothrop,* for relator.

Under the decision in the *County of · Wayne v. the City of Detroit, 17 Mich. 390,* we are clearly entitled to a *mandamus* for the fines collected for drunkenness, vagrancy and disorderly conduct, under sections 30 of the ordinance referred to, and which, as shown by the return, amount to $10,279.

The ordinance referred to in the return can have no more weight than the ordinance of March. 6, 1866, which was passed upon in that case.

We are also equally entitled to the fines collected under section 2, for it is included in *Comp. L. p. 493,* § *1550,* as amended in in laws of 1865, p.    The amendment to city charter specifies disorderly conduct — *Laws 1861, p. 201.*

The amendment to the charter says "vagrancy or disorderly conduct." The fines under this section amount to $2,288.

The remaining sections 1 and 7, are comprehended and referred to by the charter of the city as "violations of the city ordinances relative to breaches of the peace." The statute prohibited these offences, and affixed a penalty to their commission equally as to drunkenness. and disorderly conduct, but instead of referring to them specifically, described them generally.

We contend that a violation of any of these ordinances is a breach of a penal law.

All of them except sections 1 and 4, are offences under the general laws of the state.

Sections 2 and 3 are included in *Comp. L., p. 493, § 1550,* as amended by laws of 1865, p.

Sections 5 and 6 are included in *Comp. L., p. 500, § 1579,* and *p. 1543, § 5874,* and *p. 1544, § 5880,* and *p. 1545, § 5881.*

Section 7 is included in *Comp. L. 1541, § 5861.*

Section 8 in *Comp. L., p. 1542, § 5868.*

See our brief in *County of Wayne v. City of Detroit.*

*Gray & Moran,* and *T. Romeyn,* for respondent.

In *17th Michigan Reports, p. 397,* is the decision of this court on a similar case.

That case holds:

1.  That the continued provision as to fines for breaches of penal laws extends to the city of Detroit.

2.  That in cases decided under authority of section 11, of chapter 13, of the Charter, the convictions are to be deemed as made under the charter, and not under the ordinance founded on it.

3.  That this law is a penal law within the meaning of the constitution.

So far this court will doubtless consider the question as settled, and not open for argument.

THE PEOPLE *v.* THE CONTROLLER OF DETROIT.

In regard to the larger part of the convictions (in fact all of them, except those for indecent exposure,) no specific penalty by way of fine is provided for, in the general law.

The proceedings are more to prevent than to punish. *See 1 Comp. Laws, chap. 42, p. 492.*

The charter gives a specific penalty for these offences when committed *in Detroit,* leaving the general law to be applied in the county everywhere.

The general provisions are not repealed as to the city by the charter, nor can the application of the one law be pleaded in bar of a prosecution under the other. *See 3 E. D. Smith (N. Y. Com. Pl.) 156; Hyatt's case 1 Wend., 380; 9 Howard, 569; 14 Howard, 19; 14 Alabama, 400: 6 Indiana, 852; 24 Missouri, 96; 13 Wend., 341; 15 Id., 215; Bish. Cr. Law, § 99, 'p. 690; Wheat. Cr. Law, § 542, 564.*

The general law of the state in a certain sense makes vagrancy and drunkenness offences throughout the state, to be guarded against and *prevented* within the locality of the city of Detroit. The charter of the city provides for their punishment, *when they have been committed,* by fine.

And the same charter places the fines in the city treasury.

The constitutional provision has its scope of operation and application under the general law. The charter is in effect but a municipal regulation.

This is the *equitable* construction. The county and city share alike in the proceeds arising under the general law.

And such is the *legislative* construction. This ought to be observed and upheld, if possible.

The proceeds of the convictions under sections 1 and 2 of the ordinance, are certainly not offences under the general law. They are mere municipal regulations.

Making a noise is punishable at common law, only when it amounts to a nuisance. *See 1 Russell on Crimes, 327.*

For these and other reasons, we contend that the *mandamus* should not issue as prayed for.

*Per Curiam.*

All those fine moneys which were collected of persons convicted of drunkenness, or as disorderly persons or vagrants, amounting in all to $10.279, are within the previous decision of this court in *Wayne County v. The City of Detroit, 17 Mich. 390,* and there could have been no valid excuse for not paying them over on demand. We held before, that the penalties in those cases were not collected under the city ordinance at all, but under section 11 of chapter 13 of the city charter: the city ordinance being a mere re-enactment of that section, and therefore entirely idle and nugatory.

The remaining moneys are not covered by the former decision, but we think they fall within the same principle. It is the statute which gives the police justice the authority to hear and determine these cases, which prescribes what species of criminal conduct he shall take cognizance of, and what penalty he shall impose. We do not decide, nor intimate whether, if these cases were ordinary prosecutions under the city ordinances, the penalties imposed by the ordinances could be regarded as imposed under "the penal laws of the state." That question is not before us. The ordinary prosecutions for breaches of the city ordinances are had in the Recorder's Court, and not before the police justice. At the Central Police Court, are to be tried the cases of vagrancy and disorderly conduct—which cases do not come under the ordinances at all; and also "violations of the city ordinances relative to breaches of the peace." In regard to these latter cases, however, it is to be observed that the statute makes new and peculiar regulations concerning them, and that it does not refer to the ordi-

nances at all except to ascertain what conduct is made a breach of the public peace by them. The ordinances are referred to for definition, and not for penalties.

This will be made very apparent by looking into the ordinance before us in this case, where we find that the same conduct when punished under it by prosecution in the recorder's court, may be punished by a fine of three hundred dollars; while if punished as a breach of the section in the city charter which we have referred to, the penalty is limited to fifty dollars. We are therefore of opinion that all of these prosecutions are to be regarded as prosecutions under the penal provisions of the city charter, and not as prosecutions in any proper sense under the municipal ordinances.

It was objected to this view, that in some cases shown by the return, the fines appear to have been imposed for acts which are neither vagrancy, disorderly conduct, nor breaches of the peace, and therefore, not within the section of the charter referred to, and not made criminal by any law of the state. The answer is, that the police justice only has authority to try in the court which imposed these fines, the cases enumerated, and we must assume that every case he has tried, was regarded by him as falling within one of these three classes. If in any case he has erred, and imposed a penalty for conduct which could not be legally thus classified, the error was one of law, for which the party convicted might at the time have had an appropriate remedy.

We cannot in this collateral proceeding, enter upon an investigation whether his rulings have been correct or not.

It is proper to say in this connection, that in coming to this conclusion, we do not, as counsel seem to suppose, hold any provision of the city charter to be unconstitutional. The charter provides that these fine moneys shall be paid into the city treasury, but it is to be presumed that the

legislature designed the subsequent disposition of them to be in accordance with the constitutional provision.

The other Justices concurred.