On motion to strike bill of exceptions, submitted on briefs June 18, decided July 22, 1913.

On the merits, argued January 27, decided February 3, 1914.

# REDSECKER v. WADE.

(134 Pac. 5; 138 Pac. 485.)

**Appeal and Error—Objections—Presentation to Trial Judge.**

1. Under Section 172, L. O. L., providing that the statement of an exception, when settled and allowed, shall be signed by the judge and filed with the clerk, and thereafter it shall be deemed and taken, to be a part of the record in the case, objections to the form and structure of the bill of exceptions should be addressed to the trial judge, whose duty it is to settle the terms of the bill.

**Exceptions, Bill of—Form and Contents.**

2. Section 171, L. O. L., as amended by Laws of 1913, page 650, provides that no particular form of exceptions shall be required; that the objections shall be stated with as much evidence or other matter as is necessary to explain it, but no more; that the bill shall consist of testimony and proceedings including the exhibits, instructions, and any other matter necessary to the decision of the appeal. *Held,* that, where a bill of exceptions contained a statement of the evidence sufficient to explain various objections urged, together with the rulings of the court, and at the end it was certified by the judge that the foregoing, with the transcript of the testimony attached and the exhibits filed herewith, constituted all the testimony offered and received in the case, and that the same was settled and made a part of the record, etc., there was sufficient compliance with Section 171, as amended; the proviso being permissive, and not requiring that the bill in every case shall contain all the testimony, proceedings, exhibits, etc.

**Appeal and Error—Object and Purpose—Scope—Requisites.**

3. The purpose of a bill of exceptions being to provide the Supreme Court with a succinct and intelligible statement of the errors concerning which complaint is made on the appeal, it is not necessary in all cases to send up a transcript of the whole testimony and proceedings at the trial but only sufficient to present the errors complained of.

> [As to the scope and effect of writs of error, see note in 91 Am. Dec. 193.]

**Appeal and Error—Assignments of Error—Definiteness.**

4. Under Supreme Court Rule 11 (56 Or. 621, 117 Pac. xi), requiring assignments of error to set out briefly and concisely the errors relied on, and Rule 12, providing that no question will be examined or considered by the Supreme Court excepting those arising on the assignments of error and points as to the jurisdiction of the court and the sufficiency of a pleading to state a cause of action or defense, each assignment should be sufficiently certain to give notice to the respondent and to the court of the particular error relied on, or it will not raise any question for decision.

*Appeal and Error—Assignments of Error—Definiteness.*

5. An assignment that the court erred in admitting evidence offered by plaintiff over the objections of defendant, without stating what evidence, raises no question for decision.

*Witnesses—Impeachment—Cross-examination.*

6. The trial court could, in the exercise of sound discretion, permit cross-examination of defendant as to what names she had borne, what she had done, and whether she had ever been convicted of crime, for the purpose of discrediting her.

*Evidence—Relevancy—Name of Party.*

7. In an action on notes and accounts, testimony of plaintiff that when he first knew defendant her name was Jones, and that she also went by another name, was irrelevant and immaterial.

*Evidence—Relevancy—Meeting With Defendant.*

8. In an action on notes and accounts, testimony of plaintiff that he first met defendant, whom he afterward married, at the corner of certain streets in Portland, upstairs, was irrelevant.

*Witnesses—Impeachment—Evidence of Immorality.*

9. While a witness can be impeached for immorality, this can only be done by showing a bad reputation for morality, not by proving specific acts.

     [As to impeaching of witness by proving want of chastity, see note in 53 Am. St. Rep. 479.]

*Appeal and Error—Assignments of Error—Definiteness.*

10. Assignments that the court erred in admitting in evidence each and every record of divorce proceedings with which defendant had been connected and in admitting any and all evidence, touching on divorce proceedings between plaintiff and defendant are too indefinite to raise any question for decision.

*Appeal and Error—Assignments of Error—Definiteness.*

11. An assignment that the court erred in permitting "so many questions imputing immorality to defendant" is too indefinite to raise any question for determination.

*Witnesses—Impeachment—Conviction of "Crime."*

12. To constitute a crime within Section 863, L. O. L., providing that, for the purpose of impeachment, it may be shown that a witness has been convicted of crime, the act must be a violation of state law and be punishable capitally, by imprisonment, or by fine, in a criminal action in which the state is plaintiff; and the section does not authorize evidence of conviction of violation of a city ordinance.

From Multnomah: George N. Davis, Judge.

This is an action by F. H. Redsecker against N. J. Wade, in which plaintiff recovered judgment and defendant appeals. Respondent now moves to strike from the files appellant's bill of exceptions.

                      Motion Overruled.

*Mr. M. O. Wilkins* submitted a brief in support of the motion.

*Mr. H. C. King* and *Mr. William A. Williams* filed a brief *contra.*

Department 1.   Opinion PER CURIAM.

The plaintiff respondent here moves the court to strike from the files the defendant's bill of exceptions filed June 16, 1913, and sundry exhibits filed on the following day.   He states as grounds for his motion:

"(1) The alleged bill of exceptions does not, in relation to any exception therein noted or mentioned, contain any evidence or other matter necessary to explain such exception or any exception therein.

"(2) From the transcript of testimony attached to the said alleged bill it affirmatively appears that there was introduced at the trial documentary evidence, consisting of some 50 exhibits, none of which exhibits are either attached to or for identification referred to by mark or data (*sic*).

"(3) The said bill of exceptions does not conform to the requirements of Section 171 of Lord's Code, nor the amendment thereof on page 650, Session Laws of 1913.

"(4) The alleged exhibits are not identified, marked, or filed by the clerk of the Circuit Court or the trial court.

"(5) The alleged exceptions of appellant are, each and every thereof, to the admissibility of certain exhibits and documentary evidence, and the same are not stated in the bill nor any statement made to show in what error, if any, was made."

1. Section 172, L. O. L., provides that "the statement of the exception, when settled and allowed, shall be signed by the judge and filed with the clerk, and thereafter it shall be deemed and taken to be a part of the record of the cause."

The objections noted go to the form and structure of the bill of exceptions and should have been addressed

to the trial judge, whose function it is to settle the terms of such a document.

2. Section 171, L. O. L., as amended by Chapter 332, Laws of 1913, provides that "no particular form of exceptions shall be required. The objection shall be stated, with as much evidence, or other matter, as is necessary to explain it, but no more: Provided, however, that the bill of exceptions may consist of a transcript of the whole testimony and all of the proceedings had at the trial, including the exhibits offered and received or rejected, the instructions of the court to the jury, and any other matter material to the decision of the appeal." The proviso in this section constitutes the amendment enacted.

The bill of exceptions on file contains a statement of the evidence sufficient to explain various objections urged, together with the rulings of the court thereon. At the end of 15 pages of such matter appears the following statement, signed by the trial judge: "The foregoing, with the transcript of the testimony attached hereto, and the exhibits filed herewith, constitutes all the testimony offered and received in this case. And now, in order that the foregoing and the matters and things therein referred to may be made a part of the record, on due notice, this bill of exceptions is hereby settled and allowed this 6th day of June, A. D. 1913." There is enough in this bill of exceptions to satisfy the mandatory part of Section 171, L. O. L. The language of the proviso is permissive in its signification. It is not to be construed to require that in every case the bill of exceptions must contain the whole testimony and all the proceedings had at the trial, together with the exhibits offered and received or rejected, etc.

3. The object of the law and the purpose of the bill of exceptions is to provide for this court a succinct and intelligible statement of the errors about which complaint is made on the appeal. In some cases this can

be accomplished by a very brief statement. In others it may be necessary to send to this court everything mentioned in the proviso. We cannot settle a bill of exceptions nor decide objections to the one filed here, for that is the peculiar function of the trial judge. We do not decide that all the evidence is annexed, or that all or any of the exhibits are attached to or accompany the bill of exceptions. We only decide that there is a bill of exceptions here conforming to the mandatory requirements of the section defining such a paper. It is not amenable to the objections urged.

The motion is overruled.     MOTION OVERRULED.

Decided February 3, 1914.

ON THE MERITS.

(138 Pac. 485.)

Department 1.     Statement by MR. JUSTICE RAMSEY.

This is an action to recover money alleged to be due upon a promissory note and upon certain accounts. The defendant set up several counterclaims. There was a verdict and a judgment for the plaintiff in the sum of $2,825. The defendant appeals. The facts appear in the opinion of the court.     REVERSED.

For appellant there was a brief over the names of *Mr. H. C. King* and *Mr. William A. Williams,* with an oral argument by *Mr. King.*

For respondent there was a brief and an oral argument by *Mr. M. O. Wilkins.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

There are three counts in the complaint. The first is based upon a promissory note for $2,000, and interest thereon at 6 per cent per annum, from January 31, 1911, and $300 as attorney's fees. In the second count, the plaintiff asks to recover $80 as money loaned, and interest thereon at the rate of 6 per cent per annum from November 7, 1912. In the third count the plaintiff demands $180 for six months' work and labor.

The defendant answered, admitting all of the first count, excepting the claim for $300 as attorney's fees. The answer denied that the plaintiff is entitled to recover anything for attorney's fees. The answer denied every allegation contained in the second count of the complaint. As to the third count, the defendant admitted that she had owed the plaintiff the $180 claimed therein; but alleged that she sold the plaintiff a horse, harness and buggy, for which the plaintiff agreed to pay her $480, and that it was agreed, when said sale was made, that said sum of $180 for said work should be credited on said sum of $480, and that it was so credited. By said answer, the defendant sets up four separate counterclaims. The first counterclaim is for $1,500, which the defendant alleges that she loaned the plaintiff on October 1, 1908. The answer alleges that no part thereof has been paid. By the second counterclaim it is alleged that the defendant loaned the plaintiff, at sundry times, between October 1, 1911, and June 11, 1912, various sums, aggregating $667.50. By the third counterclaim it is alleged that the defendant, at the request of the plaintiff, furnished him board and lodging to the amount and of the value of $269. The fourth count of the counterclaim is $480 for the sale of a horse, harness and buggy, sold by the defendant to the plaintiff on June 11, 1912, upon which was credited

the sum of $180, as paid by work and labor. The plaintiff demands judgment for $2,500, and interest, and for $300 as attorney's fees. The defendant demands judgment for $2,917 and interest, less the sum of $2,000 and interest, due the plaintiff on the first count of the complaint.

The reply denies most of the new matter contained in the answer, and sets up new matter. The case was tried by a jury, and a verdict and a judgment were rendered for the plaintiff in the sum of $2,825.

The plaintiff and the defendant were formerly husband and wife, and the defendant had had a former husband, but she was divorced from the plaintiff, and also from her former husband.

4. The appellant has set forth nine assignments of error. Some of her assignments are too indefinite to raise any question for decision.

Rule 11 of this court (56 Or. 621, 117 Pac. xi), prescribing what the printed abstract shall contain, sets forth the following statement as to the required contents of the assignment of errors:

"And the appellant herein says there is manifest error on the face of the record in this: (Here assign and set out briefly and concisely the errors relied upon for a reversal or modification of the order, judgment, or decree appealed from)."

Rule 12 provides that no question will be examined or considered by this court, excepting those arising upon the assignments of error as contained in the printed abstract, and the points going to the jurisdiction of the court, and as to whether a pleading states facts sufficient to constitute a cause of action or a defense. It is required that the assignment set out the errors relied upon "briefly and concisely." Formerly the assignment of errors in law cases was required to be set forth in the notice of appeal. While great particularity in setting out the errors assigned is not re-

quired, yet it is necessary to be reasonably specific in the assignments.

In *State* v. *McKinnon,* 8 Or. 487, it was held that an assignment that "the decision and judgment are against law" is too indefinite.

In *Northern Pac. T. Co.* v. *Lowenberg,* 11 Or. 287 (3 Pac. 683), it was held that an assignment "that the court below erred in admitting certain testimony as is fully stated in the bill of exceptions herein filed" and "in excluding certain testimony as is fully stated in said bill of exceptions" is too indefinite.

In *Burton* v. *Severance,* 22 Or. 91 (29 Pac. 200), the syllabus of the court is as follows:

"The notice of appeal must specify the errors complained of with such certainty that the appellate court may see upon what grounds the ruling of the court below was based; otherwise the errors will be disregarded."

In *Herbert* v. *Dufur,* 23 Or. 464 (32 Pac. 302), the court says:

"In the common-law sense, an assignment of error was in the nature of a declaration or complaint. * * It was considered as a pleading, filed by the party complaining of the errors of the judge, and, for that reason, it was held that each assignment should be single and not multifarious. * * The assignments of errors at common law, and the requirements under our statute to specify the grounds of such errors with reasonable certainty in the notice of appeal, upon which the appellant intends to rely, though differing in modes of procedure, are intended to serve the same purpose. * * It is important, then, that each specification of error should be complete in itself and so framed as to clearly present the question of law upon which a decision is sought."

In the first volume of Hayne on New Trial and Appeal (Revised ed.), page 747, the author says:

"The specifications must be of particular errors.  A mere general specification is insufficient.  The reports furnish examples of this.  Thus, if a specification that the court erred in entering a judgment for the plaintiff is too general for any purpose.  So, also, is a specification that the court erred in ordering judgment for the plaintiff on the pleadings."

Each assignment should be sufficiently certain to give notice to the respondent and to the court of the particular error intended to be relied upon, or it will be insufficient to raise any question for decision.

5. The appellant's first assignment of error is: "The court erred in admitting evidence offered by plaintiff over the objections of defendant."  This does not state what evidence was offered or objected to.  It raises no question for decision.

6. Assignments 3, 4, and 5 are also too indefinite to be considered.  However, they appear to refer, in a general way, to the cross-examination of the defendant.  Counsel for the plaintiff was permitted by the trial court to ask her many questions as to what names she had borne, what she had done, and as to whether she had been convicted of a crime, etc.  In the exercise of a sound discretion, the trial court could lawfully allow this, for the purpose of discrediting the witness.

In *State* v. *Bacon,* 13 Or. 144 (9 Pac. 393, 57 Am. St. Rep. 8), the syllabus of the case is:

"Subject to the sound discretion of the court, a witness may be compelled to answer any question which tends to test his credibility, or to shake his credit by injuring his character, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself; except only that he may claim his privilege and refuse to answer a question which tends to expose him to a criminal charge."

In *Real* v. *People,* 42 N. Y. 270, the court says:

"My conclusion is, that a witness on cross-examination may be asked whether he has been in jail, the

69 Or.—11

penitentiary, * * or any other place that would tend to impair his credibility, and how much of his life he has passed in such places'': See, also, *State* v. *Reyner,* 50 Or. 231 (91 Pac. 301).

Such evidence is admissible only to impair the credibility of the witness testifying, and the trial court, in the exercise of a sound discretion, may either receive or reject it without error.

7. In appellant's second assignment of error, she claims that the court erred in permitting the plaintiff to testify when and where he first met the defendant, and as to what name she bore at that time. This evidence appears to be irrelevant and immaterial. Her name appears to have been Jones at that time, and the plaintiff says that she also went by the name of Edith St. Luster. In her testimony, she said that her name was Jones, and that she may have been called St. Luster in jest, but not seriously.

8. The plaintiff testified, also, that he met her on the corner of Fourth and Taylor Streets in Portland, upstairs. We are unable to see the relevancy of this. All this occurred before the plaintiff and the defendant were married, and the plaintiff admits, in his evidence, that his courting of the defendant began when he met her as above stated, and that they were married a few months thereafter.

9. If the facts referred to in this assignment were drawn out in an attempt to impeach the defendant as a witness, they were incompetent. A witness may be impeached for immorality, but this can be done only by showing his general bad reputation for morality, and not by proving specific acts: See Section 863, L. O. L., and 2 Elliott, Ev., § 978.

10. The appellant, in her seventh assignment, asserts that the court erred in admitting in evidence ''each and every record of divorce proceedings admitted by the

court as evidence.'' This is too indefinite to raise any question for decision.

In her eighth assignment, she contends that the court erred in admitting ''any and all evidence touching upon divorce proceedings between plaintiff and the defendant.'' This also is too indefinite. This court cannot be required to go through several hundred pages of evidence to ascertain to what the appellant objects.

11. In her ninth assignment of error, the appellant avers that the court erred in permitting ''so many questions imputing immorality to defendant, and in requiring answers thereto.'' This also is too indefinite to raise any question for determination.

12. In the sixth assignment, the appellant contends that the court erred in admitting in evidence judgment-roll No. 46,675.

When the defendant was on the stand, as a witness in her own behalf, she was asked whether she had ever been convicted of a crime, and she answered that she did not remember that she had been. She was then asked whether she was convicted of a crime in Judge McGINN's court on or about September 26, 1911, and she answered that she was not.

Later in the trial, the plaintiff offered in evidence said judgment-roll, and stated that he offered it for the purpose of impeaching the defendant as a witness, by showing that she had been convicted of a crime. It was objected to as incompetent and irrelevant. The objection was overruled and the ruling was excepted to. The bill of exceptions shows that it was received in evidence and filed and marked ''Plaintiff's Exhibit No. 51.'' A copy of said judgment-roll is set out in the printed abstract of record on pages 51, 52, 53, and 54 thereof. This judgment-roll is not among the exhibits sent up to this court, but it is referred to properly in the bill of exceptions and in the abstract and set out there. This judgment-roll shows that the de-

fendant herein was convicted of a violation of ordi-
nance No. 22,725 of the City of Portland, providing
for the licensing and regulation of the traffic in in-
toxicating liquors in the City of Portland. The case
was taken to the Circuit Court of Multnomah County,
on appeal, and, on a trial there, the defendant was
convicted and sentenced to imprisonment for not less
than 50 days, nor more than six months in the county
jail, and she was paroled by the Circuit Court.

Section 863, L. O. L., provides, *inter alia,* that it may
be shown, for the purpose of impeachment of a witness
by the examination of the witness, or the record of the
judgment, that he has been convicted of a crime. If
the judgment-roll referred to shows that the defendant
was convicted of a crime, within the meaning of Sec-
tion 863, L. O. L., the ruling of the trial court is cor-
rect, but, if she was not convicted of a crime, said
ruling is error.

She was convicted of a violation of a city ordinance
in a case in which the City of Portland, and not the
state, was the plaintiff. A crime is defined by Black
in his Law Dictionary (2 ed.), 299, as follows:

"A crime is an act committed or omitted, in violation
of a public law, either commanding or forbidding it;
a breach or violation of some public right or duty to a
whole community in its social aggregate capacity, as
distinguished from a civil injury."

The conviction of a person of a violation of a city
ordinance, which is a local law, is not a conviction of
a crime within the meaning of Section 863, *supra*
To constitute a crime within said section, the act com-
mitted must be a violation of a state law, and be pun-
ishable capitally, by imprisonment, or by fine, in a
criminal action, in which the state is the plaintiff.

In *Triphonoff* v. *Sweeney,* 65 Or. 299 (130 Pac. 979),
the court says:

"It is well settled that, to disqualify a witness, or to be used to affect his credibility, a conviction must be of an offense against the law of the land. A conviction under a municipal ordinance is not a conviction of such an offense within the meaning of Section 863, L. O. L."

In *Koch* v. *State,* 126 Wis. 478 (106 N. W. 534, 5 Ann. Cas. 389, 3 L. R. A. (N. S.) 1086), the court says:

"We are therefore forced to the conclusion, upon principle and authority, that the term 'criminal offense,' within the meaning of Section 4073, Rev. Stats. 1898, includes misdemeanors as well as felonies, but that conviction under a municipal ordinance is not a conviction of a criminal offense within the meaning of such statute": See, also, *State* v. *Crawford,* 58 Or. 116 (113 Pac. 440, Ann. Cas. 1913A, 325).

The judgment-roll referred to showed that the defendant had been convicted of a violation of a city ordinance, but, as that is not a crime, within the meaning of Section 863, L. O. L., the admission of said judgment-roll in evidence for impeachment is reversible error.

The judgment of the court below is reversed and a new trial is ordered.                    REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.